I would like to first apologize for not being here at 9 to both the court and the counsel. I think this is again another ADEPA tolling case and it involves whether or not there was a difference in the first round to the second round of habeas corpus petitions. I think the critical factor in this case comes down to whether or not it was told between Mr. Lucio's filing with the Supreme Court of California and then the filing of his next round in the Superior Court of the State of California. And in the Superior Court of the State of California, that Superior Court did determine the petition on the merits. It did not deem it to be untimely. So under the King case — Didn't it like dispose of it the same day? I mean, I have to admit I'm not familiar with the California practice, but at least — and I may be confusing the two cases, but at least one of these, the Superior Court denied the petition the same day it was filed. Yes, I believe it was the same day or the day after, but they specifically denied it on the merits. They did not find it to be untimely filed. And therefore, under King and under case Gaston v. Palmer, 387 F. 3rd. 1004 decided by this Court in 2004, the time between the filing of the denial by the California Supreme Court and the denial or the denial by the Superior Court in the second round, that whole time would be told. And therefore, the statute of limitations would not have started to run until the denial by the Superior Court. And upon ruling such, then the petition for writ of habeas corpus was filed in the District Court timely. It would have been filed approximately with various tollings while the second round of petitions were actually pending in the California courts. Is that the case if the subject matter of the petition filed in the Superior Court is different than the subject matter of the petitions previously filed? Well, there were some claims that were the same in which the appellant, Mr. Lucio, had tried to correct the errors. And there were also one or two new claims. Regarding the new claims, I cited my reply brief that in the case of Walker v. Crosby Let's get the facts straight as to what claims were involved. In the filing in the California Supreme Court, what claims were covered by that filing? The claims all revolved around whether or not appellant, Mr. Lucio, was competent, received competent representation, representing himself. Well, let me read from your opening brief. Appellant filed a petition for writ of habeas corpus in the California Supreme Court to compel issuance of a certificate of appealability. It seems to me the first three filings all had to do with trying to obtain a certificate of appealability so you could appeal. Yes. And you ran out of luck there because you got turned down each time. Right. And the application after that, although it might have sought to raise the same underlying issues, was no longer directed toward getting a certificate of appealability. It was directed toward more traditional habeas post-conviction review. Right. But within the realm of trying to get the certificate of appealability, he was also having to raise the substantive issues underlying the certificate of appealability to show the Court that he was But that wasn't the relief sought. The relief sought to specifically obtain a certificate of appealability. But that may be the relief sought for that, but I don't believe that those were new issues in the new round because those were issues raised in the State court. Because to get the certificate of appealability, the Court of Appeals or the, if he had gotten review in the California Supreme Court, would have had to made some determination as to whether or not at least those issues were at least arguably meritorious. So I don't believe, I believe that those issues were part and parcel of the issues eventually raised in the second round. And as I cited in my reply brief, Walker v. Crosby 341 F. 3rd 1240 states that the petition is looked to as a whole in terms of statute of limitations. You don't look to each individual claim. If the application is timely filed as to any claim, then it's filed timely as to all claims. Well, that doesn't speak to the potential Biggs problem as to whether you've completed one round and you're now starting another. Well, in Biggs and King, neither of those cases actually involved a situation where there were new claims being raised. I think to that extent, any comments in those cases was merely dicta. But then again, I think that Walker v. Crosby would encompass that issue. So I don't believe that that should be a problem for Mr. Lucio in this case, based upon the Walker case. And another point in the, I believe it's the Levesque, Chavez v. Lamar case stated, even if the state court says that the time, the filing is untimely, tolling can still be, exist. Let me go back to the question I was asking you about what the petitions covered. The petition in the California Supreme Court filed on February 5th, 1999, appears to cover only challenges to the three strikes law. Well, and I don't find that challenge anywhere else. Subsequent. Yeah, he did. He did dismiss some of his claims once he got into the second second round. Well, I'm not dismissing some of the only claim that I can find. And if it's wrong, I'd like to know because the only claim I can find that was filed in February of 99 was a challenge to the three strikes laws as unconstitutional. As far as I can tell, that claim was only raised and then abandoned. Yes. And but the abandonment of that, of those claims would not affect, by abandoning the claim, that does not affect the running of the statute of limitations because, as noted, I believe in either the King or the Biggs case, you know, taking a position and dropping it does not prejudice. The the appellant, in terms of the statute of limitations, that that is permissible. Well, let's assume you have tolling up through June of 98 through those first two petitions, excluding whatever period there may be between the end of the trial proceedings. And let's just start with 98. The only thing that happens for two years is the filing of an unrelated challenge to the three strikes laws. Is that right? Yes, I believe so. So. The question is whether when you're pursuing all these other claims, which are raised for the first time, really, in 2000, in January, May 2000, whether you get tolling up until then because you had an unrelated claim filed in the California Supreme Court. Well, I believe, again, Walker versus Crosby answers that question. Because there there would have been at least one of one of the claims as contained in the original round that was also included in the second round. So what I don't which one isn't also included. Well, I believe that it would have been I believe he was in the first round challenging also challenging the his inability to act as his own counselor. Well, it's you're talking about in the petition in the California Supreme Court. I believe so. Well, let's take a look. It's in the excerpt of record page eighty eight, eighty seven. And. Page 90 of the grounds for the week. And then there's an attached petition. And where do you find anything other than the challenge to the three strikes? It may not have been your honor in the Supreme Court, but I believe below he did in the court of appeal. All right. That's my recollection. The first two filings in the court of appeals, they were for to enable you to file a direct appeal, right? Yes, Your Honor, and I believe at least the first claims, I believe, were continued on into the second round and at least in part. At least the rationale for the relief. Yeah. Yes, Your Honor. You didn't you didn't ask for a certificate after the first three filings, is that correct? For your client, I believe that the certificate was merely asked for in the first round up through the California Supreme Court. And I believe that at least one of the claims was continued into the second round. Well, you've got a two year interval between the end of your efforts to have a direct appeal and the filings of the claims that we're now talking about. And in that two year interval, all that happened was the filing in the California Supreme Court of what seems to be totally unrelated claim. Well, after the denial by the California Supreme Court and the new round and in the superior court, I believe there was at least some of the claims were the same. Some of the underlying substantive claims, I don't recall exactly which of them they are, but he did continue some of them. He dropped some of them and then continued on. OK. Thank you, Your Honor. One additional question. Number three, which is the petition that was filed as a writ of mandate with the California Supreme Court petition we've been talking about. Was that necessary for exhaustion purposes? Yes, it was, because there can be no exhaustion without first seeking review by the California Supreme Court. And does that requirement extend to the certificate of appealability? I believe it is, Your Honor, because I don't think let me jump ahead because I realize I'm taking you over time. My impression is that he could have proceeded with with standard habeas relief on the substantive grounds once he'd been turned away in his attempt to appeal. I believe that's what he did, Your Honor, in the second round. And under Cary v. Saffold, it says we don't, you know, in terms of exhaustion, et cetera, we don't look to the statute of limitations. We don't look to whether it's direct review or collateral relief, but they're treated the same. So I believe for the collateral review issue, we would have had to have sought review for that in the California Supreme Court. But it could have been through either vehicle. I mean, for federal purposes, exhaustion could have been accomplished by raising the issue either through appeal or through habeas in the state system. In the state system, there is no direct review of by the California Supreme Court. It's a it's a it's a discretionary act by the California Supreme Court, though it comes in the line of of direct of the appeal. So I used the wrong vocabulary, but what I'll call the appellate line or the habeas line, either one will suffice for federal exhaustion purposes, as long as the issue has been raised properly someplace. Yes. But I think he did have to first go to the California Supreme Court for that. Thank you. Good morning, Your Honors. May it please the Court, Deputy Attorney General Simon Castello appearing on behalf of Respondent. I would like to clarify why the 332 day delay between the California Supreme Court initial habeas, which followed the two mandate petitions and the next round of petitions, does not qualify for tolling. There was no claim in the California Supreme Court, then the first California Supreme Court habeas petition that was necessary for exhaustion of any of the claims raised in the federal petition. And none of those claims were thereafter raised in any of the petitions in the in the third or second to last round of habeas petitions, two of which in the final of which were all denied by the California courts as untimely. In addition, I would like to point out something that's of relative importance with the mandate petitions. While a petitioner needs to allege that a non-frivolous claim exists for appeal in trying to get a certificate of probable cause, he is not bound by any of those potential claims when he actually, if the court grants him the right to appeal, he does not need to raise any of those claims later. He can abandon all of the claims that supported his original request for a certificate of probable cause and raise entirely new claims. The purpose of the certificate of probable cause procedure is to simply weed out frivolous appeals following guilty pleas. Therefore, no exhaustion can occur in the mandate process because the court cannot grant substantive relief as to any of those claims. And a petitioner is not required to later raise any of those claims. Therefore, the mandate petitions are simply an attempt to perfect an appeal following a guilty plea and, as I said, cannot result in substantive relief as to the issues raised and therefore cannot result in exhaustion of claims because all it allows a petitioner to do is file a direct appeal during which he can raise all completely new claims. Therefore, Respondent does not believe that the 295-day gap, even if this court were to grant tolling during the pendency of the actual mandate petitions, which for the reasons I just discussed, I don't believe are entitled to any statutory tolling, but even if the court were to grant that tolling, the 295-day gap between those petitions is not entitled to tolling. And thereafter, between the two mandate petitions, Your Honor, even after... This is pretty confusing because they're not called the same thing. I mean, he files two things. One's called mandate. One's called habeas. The Court of Appeals responds to two things, reversing the labels. Which one came? Which is which? Your Honor, the first petition that petitioner filed, he called it a mandate petition. Okay. And, in fact, it was. When looking at the substance and the content of the petition, he was simply seeking a certificate of probable cause from... The Court of Appeal ordered the trial court to issue him a certificate of probable cause so that he could appeal. And in doing so, as required by the California rule of court and the statute that governs that procedure, he identified what he believed his potentially meritorious claims for an appeal could be. The Court of Appeal issued an order denying a habeas. I don't believe that that really changes the substance of the actual first petition. And that's bolstered by the fact that the second petition, petitioner called it habeas. And the Court of Appeal then deemed that petition to be a mandate petition and denied it. I think that what we can glean from that sort of confusion is that, in fact, when you're looking for a certificate of probable cause in the Court of Appeal, that has to be a mandate petition. And, in fact, under the California cases, the only avenue of review following the trial court's denial of your original request for a certificate of probable cause is a mandate petition in the Court of Appeal. The trial court's original denial order is not itself appealable at all, which is the reason Respondent has argued that this petitioner's conviction had to become final when the trial court denied that request because it's non-appealable. The direct review process is over unless, later, the Court of Appeal grants your mandate petition. And, in this case, it did not. Therefore, his conviction had to become final back on January 30th of 1997 when the trial court denied his request for a certificate of probable cause. So, at that moment, was there any barrier to him seeking habeas-type relief from the California courts? There was not, Your Honor. I could find no case or rule that says, following a guilty plea, a petitioner must proceed with a petition for written mandate first in the Court of Appeal before he can initiate his habeas petitions. I don't believe that there's any state bar to a petitioner simply saying, okay, I was not able to get a direct appeal via the trial court. Therefore, I'm going to start filing my habeas petitions in the Court of Appeal or Superior Court and the California Supreme Court. And, in fact, that is what he did later. But, in Respondent's view, way too late because he had already waited more than three years after his conviction became final to really initiate a proper round of review, starting in the Superior Court and then proceeding to the Court of Appeal and then the Supreme Court. Well, whether it's three years or two years, whether you start from the May 97 date after the first whatever you want to call it, or after the second one, there's still two years after the end of that until the filing in the Superior Court of the claims that we're basically talking about. Now, my question was that I asked your opponent. I wanted to ask you, in between there was a filing in the California Supreme Court, as far as I can tell, challenging only the three-strikes law. Is it your position that that is an unrelated petition that does not count toward the tolling? Absolutely, Your Honor. In that position, in that petition, the first California Supreme Court petition, which he did entitle to be a habeas petition, and it preceded this long 332-day gap, the following claims were raised. The petitioner claimed the trial court was without jurisdiction to accept my guilty plea because the three-strikes law violates the Equal Protection Clause, a similar claim based on an allegation that the three-strikes law violates the Double Jeopardy Clause, and finally, a claim that his guilty plea was invalid because he accepted the plea under the threat of the three-strikes law. None of those claims are the claims at issue in the federal habeas petition. In that petition, he claims he was incompetent to enter his guilty plea, that the two separate claims based on an allegation that the state breached the plea agreement, one being based on the fact that he was sentenced by a different trial judge, one being based on his allegation that the prosecution in the court improperly used one of his prior convictions to enhance his sentence, a claim that his sentence violated the Ex Post Facto Clause, and various IAC claims. Most of those claims are raised in the subsequent set round of petitions that start on May of 2000. That is correct, Your Honor. So the period I'm trying to deal with at the moment is the period between June 98 and May of 2000. Now that is almost two years. Correct. And if the intervening California Supreme Court petition has no effect and doesn't toll, then we have a two-year period, and that's the end. That's correct, Your Honor. Your position is that it doesn't toll because it doesn't include any related claim or any claim that was subsequently involved, subsequently set forth and is now part of the habeas petition. Your Honor, I don't think – first, I don't think that that petition would be entitled to tolling because under my calculation, the statute expired before that, and that's just the first argument. I think that the argument could certainly be made that that petition doesn't qualify for tolling because he did not rely on any of those claims in his federal habeas petition. However, even if the court were to give him tolling during the pendency of that petition, there are two very large gaps, either one of which is going to render the federal petition untimely. There's a 224-day gap immediately preceding that petition, which is not entitled to tolling, and a 332-day gap immediately following that petition that under King and Biggs, I submit, is clearly not entitled to tolling because, as has been kind of fleshed out with the questions, he's not raising the same claims in the next round, and that is an absolute requirement under King. Well, that was the question. Were there any of the claims are the same claims? They are not, Your Honor. That habeas petition that was filed on February 5th, 1999, and denied in June of 99, raises these claims that are not later raised in the next round of petitions. He raises four entirely new claims, abandons all the claims raised in this California Supreme Court petition in 99. Therefore, this 332-day gap under King and Biggs is not entitled to tolling. He is not attempting to correct any deficiencies whatsoever in the 1999 California Supreme Court habeas petition. Therefore, with the 26 days at the tail end, the days which Petitioner concedes he's not entitled to tolling, and the 56 days at the beginning, that 332-day lapse is fatal to the timeliness of the petition. Thank you, counsel. Thank you, Your Honors. Yes. First of all, my brief indicates, Your Honor, that at excerpts of Record 88 through 153, that issues of his lack of competency to enter a guilty plea and attacking the three-strikes law were both in the California Supreme Court petition and the subsequent Superior Court petition in that new round. As to writ of mandate, habeas corpus in the state court, direct appeal, I think Carrie Saffold versus Saffold says, we don't really look to what it's called. So long as some relief is being pursued, we don't really care the exact type of relief, what we're going to call it, whether it's appeal, habeas corpus mandate. We're going to look to see whether some relief is being pursued. And thus, the tolling was complete up until the denial by the Superior Court in the second round, and that would bring the case within the statute of limitations. Unless the Court has any further questions, I would thus submit. Thank you, counsel. The case just argued is submitted. Thank you. Now we'll hear the case of Lamelli versus Gordon.
judges: Reinhardt, Clifton, Weiner